# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**PATRICIA C. RASCON,**

      Plaintiff,

vs.                                                                 Civ. No. 01-1391 BB/DJS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand for Rehearing filed July 23, 2002 (Docket No. 10). The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion should be granted.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1. Plaintiff, Patricia C. Rascon, applied for Social Security Disability Insurance and Supplemental Security Income benefits on March 11, 1999, alleging a disability which commenced January 27, 1999. Plaintiff alleged a disability due to back, neck and foot pain, numbness and the

inability to concentrate. Tr. 60, 66, 185. The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on March 20, 2001. At the hearing the Plaintiff was represented by Mark S. Sanford, an attorney. On April 26, 2001, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The claimant has not engaged in post-onset substantial gainful activity; the claimant has severe impairments consisting of Parkinson's disease and a moderate disc herniation of her spine; the severity of the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding her limitations are not totally credible; the claimant has the residual functional capacity for a full range of sedentary work on a sustained basis; the claimant's past relevant work as a secretary/receptionist did not require her to perform work-related activities precluded by her residual functional capacity; the claimant's Parkinson's disease and disc herniation of her lumbar spine do not prevent the claimant from performing her past relevant work; the claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. Tr. 17-24.

2. The ALJ entered his decision on April 26, 2001. Thereafter, the Plaintiff filed a request for review. In March of 2001 the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 6-7. The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on December 10, 2001.

## II. STANDARD OF REVIEW

3. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

4. In order to qualify for benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. See Thompson, 987 F.2d at 1487.

5. At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities and his impairment meet or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III. DISCUSSION

6. Plaintiff raises two arguments in her Motion. Plaintiff contends that the ALJ's past work

finding is contrary to law and that the ALJ's pain and credibility finding is not supported by the substantial evidence.

Past relevant work.

7. In making a finding that Plaintiff can return to her previous work, the ALJ must perform a three part analysis: 1) the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC); 2) the ALJ must determine the physical and mental demands of the claimant's past relevant work; and 3) the ALJ must determine whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). "At each of these phases, the ALJ must make specific findings." Id. The ALJ's decision contains no such analysis. Further, the medical evidence does not support the ALJ's finding that the Plaintiff can perform her past work.

8. Plaintiff has a long history of right-sided weakness. In May of 1998, Marco T. Eugenio, M.D. noted that the Plaintiff first noticed tingling in her right foot six years ago Tr. 101. He further noted that she dragged her right leg when she walked. Id. He found she had poor muscle development in the extremities. Tr. 102. When he performed a neurological examination he found that the Plaintiff had spasticity when she tried to move her arms. Id. Dr. Eugenio further noted that Plaintiff's deep tendon reflexes were hyperactive and he could not detect any normal reflexes.

9. Plaintiff was evaluated by a neurologist, Lawrence F. Buxton, M.D., in August of 1998. He found that she had clumsiness during rapid movements with the right hand and foot; hyperactive deep tendon reflexes, and minimal spastic gait on the right. Tr. 105. Dr. Buxton diagnosed the Plaintiff with a "possible cervical myelopathy from a compression lesion or a hereditary form of spasticity dytonia." Id. He referred her for an MRI of the cervical spine and prescribed an

anti-spasticity drug, Zaaflex. Tr. 106.

10. In October of 1998 the Plaintiff was evaluated by Y.D. Heilbronn, M.D. Tr. 111. He found the following in his examination: Plaintiff walked with small steps with "an obvious impaired right leg with high arched feet;" almost hind foot varus deformity on the right; slight tendency to claw hand on the right; slight diffuse muscle wasting of the forearms and calves; numbness of the right foot and calf; minimal clumsiness on rapid alternating movements, more on the right; and positive supine straight leg raising on both side, pain on palpation of the lower lumbar spinous processes with moderate paraspinal lumbar muscle spasm. Tr. 112. Dr. Heilbronn diagnosed the Plaintiff with "[d]egenerative [central nervous system] disease such as early Parkinson's or other type of extrapyramidal disease, degenerative disease of upper spinal cord/lower brain stem...[f]amilial hereditary peroneal neuropathy, Charcot-Marie-Tooth type." Tr. 113.

11. In an examination by John Campa, M.D., in February of 1999, Dr. Campa noted that the Plaintiff had no right arm swing and when she walked the ball of her right foot scraped along the floor. He further noted that she had a "cog-wheel like" stiffness on the right wrist. Tr. 117.

12. The ALJ found that Plaintiff's medications alleviated her symptoms. This is not supported by the record. In September of 1999, the Plaintiff reported to her physician, Walter Lajara-Nanson, M.D., that her medications relieved the tightness in her right side and allowed her to move and ambulate more freely but the medication wears off in the middle of the day and the symptoms return. Tr. 166. Dr. Lajara-Nanson started the Plaintiff on a course of Mirapex.[1] In October 29, 1000 the Plaintiff reported to Dr. Lajara-Nanson that her"right upper arm tremor had done better on

---

[1]Mirapex is an prescription drug used to treat Parkinson's disease. H. Winter Griffith, M.D., Complete Guide to Prescription & Nonprescription Drugs 86 (2000 ed.).

5

Mirapex though she had good days and bad days." Tr. 164. She further told him that she did not feel as physically able as she had in the past. He noted that she her gait was "[s]omewhat rigid with decreased arm swing bilaterally, although the right side is worse." Id. He increased her dosage of Mirapex.

13. The ALJ relies extensively on the recent records of Eduardo Azziz-Baumgartner, M.D. This reliance is misplaced. Dr. Baumgartner's records do not indicate a physical examination of Plaintiff's Parkinson's symptoms. Tr.177-82. His concern and attention was not on Parkinson's disease but rather on Plaintiff's high blood pressure, high cholesterol levels and migraine headaches. Id.

Credibility and Pain Analysis.

14. The ALJ found that Plaintiff's subjective complaints were not credible. Tr. 23. The ALJ's analysis is flawed. When the Plaintiff proves by objective medical evidence the existence of a pain-producing impairment, then the ALJ is required to consider all the relevant objective and subjective evidence to determine the credibility of Plaintiff's subjective complaints. Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987). The ALJ failed to consider the evidence in the record that supports Plaintiff's subjective complaints.

15. The ALJ did not believe Plaintiff's allegations regarding her inability to type or use her right hand effectively. The evidence is to the contrary. The evidence is that she had a tendency to claw her right hand and her right wrist exhibited "cog-wheels like" stiffness. Tr. 112, 117. Further, the evidence is Plaintiff's medications did not totally alleviate these conditions. In addition, the ALJ did not believe Plaintiff's allegations of drowsiness from Mirapex. The ALJ specifically wrote that "there is absolutely no corroboration of any adverse side effects in the medical

6

documentation." Tr. 22 The Plaintiff reported to Dr. Lajara-Nanson she felt sedated when she took the Mirapex but takes "Coca Cola" to help. Tr. 172. Drowsiness is a known side effect of Mirapex. Tr. 198. The ALJ did not believe that she had chronic back pain because did not complaint of such after receiving anti-inflammatory medication. Tr. 22. However, the record demonstrates that the Plaintiff complained of back pain on many occasions and as late as March of 2001. Tr. 161, 166, 172 and178. The ALJ erred. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.")

16. Furthermore, the ALJ did not consider evidence that her physicians never impugned Plaintiff's credibility but rather noted her sincerity. Tr. 101 (appears to be very genuine in her complaints, but she is also very nervous); Tr. 141 (psychologist noted that she is stressed because she can't concentrate, but she would love to be healthy and to return to work); and Tr. 163 (symptoms have limited the patient's ability to continue her present job, since she been having pain, difficulty with muscle tone, tremor and difficulty with coordination.")

## RECOMMENDED DISPOSITION

I recommend finding that the ALJ did not apply the correct legal standards and his decision is not supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed July 23, 2002, should be GRANTED for proceedings consistent with the proposed findings.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to Sec.636(b)(1)(C), file written objections to such proposed findings and

recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**Don J. Svet**
**UNITED STATES MAGISTRATE JUDGE**